CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. LUCIE M. WINFREY.

FILED JANUARY 8, 1903.    No. 11,803.

1. **Conflicting Evidence.** The finding of a jury on a disputed question of fact, when supported by sufficient competent evidence, will not be disturbed by a reviewing court, even though, from an examination of the record, the evidence seems to preponderate to the contrary.

2. **Railroad:** INJURY TO PASSENGER: PRESUMPTION. It is the settled law of this state that when, in the operation of a train carrying passengers, an injury results to one of them, the imputation of negligence arises, and the liability to respond in damages becomes fixed, unless it is made to appear that the injury arose from the criminal negligence of the passenger, or was the result of the violation of some express rule or regulation of the carrier, actually brought to the notice of the party injured.

3. **Negligence.** Ordinarily the existence of negligence such as will justify or defeat a right of recovery for damages for an injury received by a passenger while being transported by a railway company is for the jury to determine as it determines other questions of fact.

4. **Contributory Negligence:** PLEADING: CONFLICTING EVIDENCE: QUESTION FOR JURY. Where, upon an issue of fact raised by a plea of contributory negligence, the testimony is conflicting, or where the evidence as a whole is of such a character as that reasonable minds may fairly draw different conclusions therefrom, it is for the jury and not the court to determine the question of contributory negligence.

5. ———: ———: ———: QUESTION FOR COURT. It is only where the facts are not in controversy or the evidence is of such a character as but one rational inference can be drawn therefrom, that the court is warranted in determining the question of negligence as a matter of law.

Syllabus by court; catch-words by editor.

6. Passenger: Leaving Train: Negligence. It is not necessarily gross negligence in every case for a passenger to attempt to leave a train, even though at the time it be in motion.

7. ———: ———: ———: Willful Disregard of Danger. Contributory negligence on the part of a passenger which will avoid a recovery must be an act committed under such circumstance as to render it obviously and necessarily perilous, and to show a willful disregard of the danger incurred thereby.

8. ———: ———: Personal Injury: Recovery. Plaintiff was a passenger on defendant company's train. When she had reached her destination, and while attempting to leave the car in which she was riding, and before she had reached the door, the train began to move and she was compelled to choose instantly and without time for reflection as to her course of action, and continued the act of alighting from the train, and in doing so was injured thereby. Held, That such action would not of itself necessarily bar a recovery, and that the question of contributory negligence was properly submitted to the jury, and its determination thereof was final.

9. Criminal Negligence. "Criminal negligence," as used in the statute, which will defeat a recovery for an injury received by a passenger is defined to mean gross negligence, such as amounts to a reckless disregard of one's own safety, and a willful indifference to the consequence liable to follow. *Union P. R. Co. v. Porter*, 38 Nebr., 226.

10. Evidence. Evidence examined, and *held* sufficient to support the verdict of the jury.

11. Instructions. Certain instructions complained of, given to the jury, examined, and *held* not to be prejudicially erroneous.

Error from the district court for Nemaha county. Action against a common carrier for personal injury. Tried below before Stull, J. *Affirmed.*

B. F. Neal, J. W. Deweese and Frank Elmer Bishop, for plaintiff in error.

H. A. Lambert, E. B. Quackenbush and W. C. Lambert, contra.

Holcomb, J.

Plaintiff began an action and recovered a judgment for damages against the defendant railroad company because

of alleged personal injuries sustained by her in alighting from one of its passenger cars, which had begun to move from the station before she alighted, where she left the train. The defendant company prosecutes error.

It appears that the plaintiff purchased from the defendant company, through one of its agents at a station on its road in Iowa, a ticket to carry her to the station of Bracken, in Nemaha county, this state. When she asked for a ticket to Bracken, for some reason she was informed by the station agent in Iowa that he could not sell her a ticket to that station, but could to Auburn, which was the next stopping place immediately west of Bracken, and that by informing the conductor of her desire to leave the train at Bracken, she would be allowed to get off at that place, as desired. Under this arrangement the ticket was purchased, and her baggage checked to the town of Auburn, and the plaintiff thereupon became a passenger, having for her destination the station of Bracken, instead of Auburn, as her ticket and baggage check seemed to indicate. The pith of the controversy becomes apparent by reading the following excerpts from the pleadings. In the petition it is alleged "that as soon as said train had stopped at said station of Bracken, this plaintiff gathered up her said baggage and personal effects and started to the front end of said car to leave the same and alight therefrom. That plaintiff had reason to expect and did expect that said conductor would be at said point to aid her in alighting from said car. That at or about the time plaintiff reached the front end of said car, and but a few moments after the same had stopped, the said defendant, its agents, and employees negligently and carelessly started said car and train and continued to move negligently and carelessly the same, and while said train was moving slowly, as plaintiff thought, and had moved but a short distance forward, and becoming suddenly convinced that said train had started on its journey to the next station, plaintiff passed down the steps of said car and stepped therefrom to the ground.   *   *   *   That in alighting from

said train as aforesaid, without any fault, carelessness, or negligence on her part, plaintiff was violently thrown to the ground and then and there and thereby was seriously and permanently injured." To this it is answered by the defendant: "The defendant further alleges that while the plaintiff was riding as a passenger on the defendant's train, and before she reached her destination, and between the stations of Bracken and Auburn in the state of Nebraska, and while the train was running, she, without any notice to the conductor or trainmen, went out of the coach in which she was riding and jumped off on the ground; and that in thus jumping off while the train was running, she was thrown off her feet and fell onto the ground; but this defendant is not advised as to whether she was injured by said fall, or the extent of such injury; but alleges the fact to be that whatever injuries she sustained, if any, the same were sustained and caused by her own willful misconduct and carelessness, and without any fault or negligence on the part of this defendant." It is disclosed by the evidence that between the starting point and the destination of the plaintiff there were two conductors in charge of the train on which plaintiff was riding as a passenger, a change having taken place at Nebraska City. It further appears that the plaintiff informed the conductor to whom she first presented her ticket of her arrangement with the station agent at the time of its purchase, and of her destination being Bracken, regarding which there is no controversy in the evidence. There is, however, a very sharp and irreconcilable conflict as to whether she informed the Nebraska conductor, who was in charge of the train when it reached the station where she designed to leave it, of the circumstances relating to the purchase of her ticket, and of her wish to leave the train at the point mentioned. Regarding this phase of the case, the court instructed the jury unqualifiedly that before the plaintiff could recover, they must find from the evidence "that between Nebraska City and Bracken on the train in question the plaintiff notified the

conductor in charge of the train that she was riding on, that she desired to leave the train at Bracken." The evidence, to us, seems to preponderate in favor of the company's contention, to the effect that the conductor had no knowledge or notice that the defendant was a passenger, otherwise than as her ticket indicated, whose destination was Auburn. There was, however, positive and direct testimony that she did notify the conductor last in charge of the train of her desire to get off at Bracken; and the jury having resolved the disputed point in her favor, and they being the judges of the credibility of the several witnesses and of the weight to be attached to the testimony of each and all of them, it is not the province of the court to overturn the jury's finding in this respect, when supported by sufficient competent evidence, as we think it was in the present instance. Assuming, then, as we must do under the jury's finding on the court's instruction, that the conductor was notified of the plaintiff's desire to leave the train at the station of Bracken, and that in attempting to leave it at that place she received injuries in alighting therefrom, by its being moved forward before she had safely stepped off the car in which she was riding, we pass to the consideration of some of the other alleged errors complained of in brief of counsel for defendant company.

Counsel say: "The principal error relied upon is the fact disclosed by the petition and the evidence that the plaintiff below voluntarily jumped off of the defendant's train while it was in motion." The facts, as gleaned from the record, prove, or tend to prove, that as the train neared the station the plaintiff gathered her baggage and placed it in the aisle of the car, by the seat in which she was sitting. Whether she was acquainted with the country and knew that she was nearing the station, or whether she was advised of that fact by a traveling companion who sat in the seat with her, it is manifest that she was cognizant of the fact that she was nearing the station, and made preparations to leave the car accordingly. The conductor passed through the car, called out the station, and, as the

train slowed up or stopped at the station, the plaintiff gathered up her baggage and started to leave the car through the front door. Before or about the time she reached the door, the train began to move, and she passed on out and down the steps, attended by a gentleman passenger, who apparently was endeavoring to assist her to alight. She stepped from the platform and steps of the car, and in doing so was thrown on the ground and received the injuries of which she complains. The conductor had left the train, stepped on the depot platform, and reentered from the rear platform of the car. Upon entering, he was advised that a lady was endeavoring to get off in front, but before he could reach the front end of the car the plaintiff had alighted in the manner stated. There is some conflict in the evidence as to whether the plaintiff left the train promptly when it stopped, but an examination of the evidence satisfies us that her movements justify a finding that she acted with all the promptness in leaving the car that could be asked for by the most exacting. In fact, some of the evidence tends to show that she started to leave the car before it came to a full stop. Other evidence fully warrants the inference that at least, immediately upon the stopping of the train, and without any appreciable delay, she started to leave the car. While there is some evidence that after the train stopped, and about the time it began to move on to the next station, plaintiff made a remark indicating that she had forgotten that that was the place where she had intended to get off, and then attempted to leave the car, other evidence of prompt action on her part is in the record, sufficient to overcome the testimony of this character. We are satisfied that an examination of the whole of the evidence on the subject warrants the inference that the plaintiff, immediately upon the stopping of the train, and with all reasonable dispatch, started to leave the car when she had reached her destination, of which she was fully cognizant. Further than that, it is a reasonable inference from the evidence that she started to leave the car before the train came to a standstill.

Another important item of evidence having a material bearing on the case is with respect to the period of time the train was stopped at the station. Some of the testimony indicates that it did not come to a complete stop. Some of the witnesses testify that it stopped but for a few seconds. The testimony of others varies in time from eight or ten to thirty seconds. It is evident that the stop was very brief, and, under the theory of the defendant, we can readily believe that in view of the fact that the place was a small way station, with no passengers to get off or on, and probably but little, if any, mail or baggage matter, it was regarded as unnecessary by those in charge of the train to more than merely stop at the station, and to scarcely allow the train to come to a standstill before starting onward again. The very brief period the train stopped, if it stopped at all, manifestly was the real cause of the injury. The train scarcely stopped at the station, and the plaintiff, however active and prompt, was unable to alight before the train continued on its journey.

Should the defendant be held liable to respond in damages under the facts as narrated in the résumé of the testimony just given? It is manifest the plaintiff knew that the train was in motion when she attempted to step from the car, and must have, in the nature of things, known that some risk attended her action in thus alighting. It is, we think, equally clear that she relied upon the train being stopped for sufficient time to allow her to alight, and was, when the train started on, compelled to choose on the spur of the moment between carrying out her previously formed intention to leave the train, under the belief that the opportunity would be afforded her to do so, and remaining on the car until the train could be stopped, because she had failed to get off, or remain thereon until she had reached the next station, and thus be carried that distance beyond her destination. It will not, we apprehend, be seriously controverted that it was the duty of the defendant company, through its servants in charge of the train, as a common carrier, to afford to its passengers at

each station, when their destination is reached and they desire to leave the train, a reasonable time to do so, and to afford a reasonable opportunity to alight therefrom before the train is moved on to its next stopping place, and that the failure to do so, from which an injury resulted, would constitute negligence, for which, and the damages resulting therefrom, the carrier would be held responsible. This rule of law is practically conceded by the defendant company in the two following instructions to the jury, requested by it to be given at the trial, which was done. As the instructions present clearly the theory of the defense, we incorporate them here in full. They are as follows:

"4th. If the jury find from the evidence that the plaintiff did notify the conductor who had charge of the train running through the station of Bracken that she wanted to get off at said station, then you are instructed that it was the duty of the conductor to stop the train at said station the usual and reasonable length of time to allow the plaintiff to alight in safety from said train; but that there was no legal obligation or duty on his part that he should personally take hold of the plaintiff to assist her in alighting from the train. If the plaintiff intended to stop at Bracken it was her duty when the train stopped to promptly leave the car and step out on the platform of said station while the train was standing at said station."

"7th. If the jury believes from the evidence that although the plaintiff held and presented to the conductor having charge of the train running through the station of Bracken and Auburn, a ticket to the station of Auburn, and you find from the evidence that she notified him that her destination was the station of Bracken, and that she wanted to get off there; and you are convinced that that is true, then it was the duty of the conductor to stop said train at said station of Bracken as heretofore explained to you, so as to allow the plaintiff to safely alight therefrom. But you are further instructed, that if the conductor did not do his duty in that respect, and the plain-

tiff did not have sufficient time to alight from said train at the said station of Bracken, this failure of duty on the part of the conductor would not of itself justify the plaintiff in jumping from the moving train."

But it is insisted by the defendant that the proximate cause of the injury was not, in fact, the starting of the train as it left the station, but the act of the defendant in stepping from the car after it had commenced to move, and while in motion, which act constituted such gross negligence on her part as to preclude a recovery for the damage resulting therefrom. To draw the distinction a little clearer, if it may be done, the contention is, as we understand counsel, that if the plaintiff, while in the act of stepping from the car platform to the station platform, had been thrown down and injured because the train began to move before she had alighted therefrom, and without a reasonable opportunity being given therefor, this would constitute negligence for which an action would lie; but if the train was in motion at the time she attempted to leave the car, and her effort was to step from the platform of the car while the train was in motion, she being aware of that fact, then the proximate cause of the injury was the act of stepping from a moving train, which in itself would constitute contributory negligence of a gross or criminal character, under our statute, and thereby absolve the carrier from liability. The statute referred to (Compiled Statutes, ch. 72, art. 1, sec. 3) has been frequently considered and construed by this court. It is a well-settled rule that when, in the operation of a train carrying passengers, an injury results to one of them, the imputation of negligence arises, and the liability to respond in damages becomes fixed unless it is made to appear that the injury arose from the criminal negligence of the passenger, or was the result of the violation of some express rule or regulation of the carrier actually brought to the notice of the party injured. *Union P. R. Co. v. Porter*, 38 Nebr., 226; *Chicago, R. I. & P. R. Co. v. Zernecke*, 59 Nebr., 689; *Chicago, B. & Q. R. Co. v. Wolfe*, 61 Nebr., 502. **In**

*Union P. R. Co. v. Porter, supra,* it is said (p. 233):
"The existence of negligence, as justifying or defeating
a right of recovery, is for the jury to determine as it de-
termines any other question of fact. If the jury find
negligence as against the defendant, such as to justify a
recovery, or find contributory negligence such that a re-
covery can not be had, such finding must stand, unless it
has no support in the evidence considered, just as must
any other essential finding of fact. It is useless, therefore,
to urge that the presiding judge is the proper trier of
questions of this kind, and that as to such he should find
the presence or absence of negligence upon the weight of
the testimony, or instruct the jury to find its presence or
absence according as a given fact or group of facts shall
be proved or disproved. The court can but state to the
jury the law applicable to the facts in respect to which
evidence has been introduced. It thereupon remains with
the jury to determine the existence of the essential facts.
If there is no evidence such as the jury should act upon
in its province, the court should instruct accordingly, or
set aside the verdict as unsupported by the proofs."
Whether the plaintiff was guilty of negligence of a gross
and willful character, within the meaning of the statute,
was a question of fact to be determined by the jury from
the evidence. Where the testimony is conflicting, as it is
in the case at bar, or where from a conceded state of facts
the evidence is of such a character as that reasonable minds
may fairly draw different conclusions therefrom, it is
for the jury, and not the court, to determine the question.
It is only where the facts are not in controversy, or the
evidence is of such a character as but one rational in-
ference can be drawn therefrom, that the court is war-
ranted in determining the question of negligence as a mat-
ter of law. In the case at bar we entertain no doubt but
that the question of contributory negligence, such as would
avoid a recovery against the defendant, was a question of
fact, to be determined by the jury under proper instruc-
tions from the court. It is not necessarily gross negligence

in every case for a passenger to attempt to leave a train, even though at the time it be in motion. This is the settled doctrine in this jurisdiction, as announced by the prior decisions of the court. Whether or not such an act constitutes gross negligence, such as would prevent a recovery for damages sustained, must depend upon the facts and circumstances surrounding each individual transaction. If the act be one showing a willful disregard of one's own safety, and a deliberate assumption of the risk and danger consequent thereon, unattended by circumstances calculated to create excitement or alarm, and regarding which every one of common sense must know is fraught with danger, then no recovery can be had. *Chicago, B. & Q. R. Co. v. Martelle,* 65 Nebr., 540. It is said in *Chicago, B. & Q. R. Co. v. Landauer,* 36 Nebr., 642: "Where it is impossible to infer negligence from the established facts without reasoning irrationally and contrary to common sense and the experience of average men, it is not a question for the jury, and the court should direct a verdict." In the same case it is further held that contributory negligence on the part of a passenger which will avoid a recovery must be an act committed under such circumstances as to render it obviously and necessarily perilous, and to show a willful disregard of the danger incurred thereby.

The plaintiff in the case at bar was proceeding to alight from the train when it had stopped at her destination, under the belief that she would be afforded a reasonable opportunity to accomplish the act in safety. While engaged in the performance of the act, by the starting of the train, or the failure to allow her a reasonable time to alight, which can be regarded only a wrongful and negligent act of the carrier, she was placed in a position where she had to choose instantly, and without time for reflection, between two lines of action;—one a continuation of the act of alighting, and the other a retracing of her steps, and remaining on the train till the next station was reached. Acting under such circumstances, and compelled to so act because of the negligent act of the carrier, she left the

train, and in doing so received the injury for which she seeks a recovery in damages. Such action would not, in our judgment, amount to gross negligence, such as would preclude a recovery for the damages received as a result thereof. In any view of the subject, under the controverted facts in the case, the question was one for the jury, and its determination thereof, when properly submitted, becomes final. The case at bar is somewhat analogous to that of *Chicago, B. & Q. R. Co. v. Hyatt*, 48 Nebr., 161, where a verdict for the plaintiff was upheld under facts less favorable to a right of recovery than those disclosed by the record herein. It appears from the opinion in that case that the passenger having arrived at her destination, and the train making its usual stop, the plaintiff immediately went out upon the platform of the car in which she was riding, for the purpose of getting off; and finding that the car had not reached the station platform, and the ground being covered with water, which, with the height of the car-step, prevented her from there alighting, she then, at the suggestion of a passenger, passed through the coach immediately in front, in order to reach the platform, and by the time she had reached the centre of it she ascertained the train was moving slowly toward the next station, yet she hurried through the car, and on reaching the front platform thereof, jumped off, receiving an injury, for which a recovery in damages was sustained. The case cited but followed and adhered to the rule announced in *Union P. R. Co. v. Porter, supra*. In the *Hyatt Case,* "criminal negligence," as used in the statute, was defined to mean gross negligence, such as amounts to reckless disregard of one's own safety and a willful indifference to the consequences liable to follow. To the same effect are *Omaha & R. V. R. Co. v. Chollette,* 33 Nebr., 143; *Missouri P. R. Co. v. Baier,* 37 Nebr., 235; *Chicago, B. & Q. R. Co. v. Hague,* 48 Nebr., 97.

From what has been said, we reach the conclusion that whether or not plaintiff was guilty of gross negligence in attempting to alight from the train under the circum-

stances was a question of fact, to be determined by the jury, and that its verdict thereon can not be controlled by the court, and the question determined as one of law. We are also of the opinion that the evidence regarding the issue of fact as to the alleged contributory negligence on the part of the plaintiff is sufficient to sustain the finding of the jury as evidenced by its verdict, and that it can not rightfully be disturbed on the ground that her action and conduct was gross negligence *per se*.

Some complaint is made as to some of the instructions of the court given to the jury. Upon the whole, we are constrained to believe that the instructions were as favorable to the defendant as could rightfully be asked for. The case seems to have been submitted to the jury very largely on the theory of the defendant as to the law applicable to the evidence. When all the instructions are considered and construed together, as should be done, they appear to have fairly submitted the issues of fact to the jury for its determination. An instruction given by the court, and which is excepted to, stated the law correctly, as an abstract proposition, and appears to have been copied from the syllabus in *Chicago, B. & Q. R. Co. v. Landauer, supra.* The instruction was not entirely applicable, under the evidence, but it could not, nor did it, we apprehend, mislead the jury, or operate to the prejudice of the defendant.

An examination of the entire record, having in mind the errors assigned for reversal of the judgment, leads to the conclusion that no prejudicial error is apparent, and that the judgment should be affirmed, which is accordingly done.

AFFIRMED.